IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JUNIOR CARMONA )<br>3226 Eastbend Ct. )<br>Abingdon, MD. 21009 )<br>**Plaintiff.** )<br>)<br>)   Case No. _____<br>)<br>CARMAX AUTO SUPER STORES )<br>10201 Philadelphia Rd. )<br>White Marsh, Md 21162 )<br>**Defendant**. )<br>_____ ) | |

## COMPLAINT
(Jury Trial Demanded)

COMES NOW Plaintiff, Junior Carmona (hereinafter referred to as "Plaintiff"), by and through his attorney of record, and files this *Complaint* for damages against Defendant, CarMax Auto Super Stores and its representatives (collectively, hereinafter, referred to as "Defendant"), and for cause would show unto the Court the following:

### PARTIES

1. Plaintiff is over the age of 19 (nineteen) and a citizen of the state of Maryland at the time of the violation of his rights at issue in this Complaint.

2. Defendant is an auto dealership licensed to operate in the state of Maryland and is Plaintiff's former employer.

### JURISDICTION AND VENUE

3. This is a suit to obtain relief for retaliation for engaging in a protected activity, with regard to discharge, in violation of the Americans with Disabilities Act of 1990, as amended by

the ADA Amendment Act of 2008 (ADAAA). Plaintiff seeks relief under 42 U.S.C. § 1981, for violation of his civil rights.

4. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(4) and 28 U.S.C. §§ 2201 and 2202.

5. Venue is proper in that the alleged act occurred in Baltimore County, Maryland.

## ADMINISTRATIVE REMEDIES

6. On or about July 1, 2020, Plaintiff filed with the United States Equal Employment Opportunity Commission ("EEOC") a Charge of Discrimination against Defendant.

7. The charge alleged retaliation.

8. The EEOC issued a Dismissal and Notice of Rights ("Right to Sue Letter") on July 30, 2020, which was received by Plaintiff on August 5, 2020.

9. Plaintiff initiated this action within 90 (ninety) days of receipt of the Right to Sue Letter.

10. All conditions precedent to the institution of this lawsuit have been fulfilled.

## FACTS

11. Plaintiff was employed by Defendant, located at 10201 Philadelphia Rd., White Marsh, MD 21162 as a sales associate from February 7, 2007 until his wrongful termination on April 27, 2020.

12. On or about March 16, 2020, the Governor of Maryland issued a mandate regarding the COVID-19 pandemic which required, amongst other instructions, the necessity of social distancing and the use of masks in public spaces.

13. On or about March 16, 2020, Plaintiff expressed to Defendant his desire to wear a mask while at work because of the Governor's declaration of a State of Emergency related to

COVID-19 and the seriousness of the impact should one contract this vicious respiratory disease.

14. Plaintiff further explained to Defendant that his wife was determined to be "high risk" and his continued work during the pandemic would necessitate the wearing of protective gear (i.e., mask and gloves) to ensure her continued well-being upon his return home after work.

15. Plaintiff's manager, a representative of Defendant, informed Plaintiff that the wearing of masks while at work was prohibited. Consequently, Plaintiff was asked to remove his protective gear during work hours.

16. By way of context, Plaintiff was a sales associate, who at the very least, was required to interact with other individuals of the general public as part of his work responsibilities. Unfortunately, this heightened Plaintiff's exposure to COVID-19 in the absence of protective gear, specifically the wearing of a mask and/or gloves.

17. Upon Plaintiff expressing discomfort with Defendant's requirement that the protective gear be removed; Plaintiff reiterated the potential danger to his wife who was "high-risk" according to the CDC guidelines. Plaintiff was then reported to the Store Manager, a representative of Defendant.

18. The store manager, a representative of Defendant, demanded Plaintiff remove his protective gear because the continued wearing of such gear would," scare away customers" and in turn, "affect [Plaintiff's] income."

19. As Defendant remained open and fully operational during this local and nationwide pandemic, Plaintiff continued to express concerns to Defendant regarding Defendant's lack of precautions to ensure the continued safety of its dedicated employees and their families.

20. On or about March 23, 2020, Defendant informed Plaintiff and other staff that Defendant was following the CDC guidelines regarding the wearing of masks and according to those guidelines, no employee, including Plaintiff would be permitted to wear protective gear, specifically masks.

21. On a date uncertain, but during the time of Plaintiff's continued expression against Defendant's prohibition of protective gear, an employee, employed in the service department, contracted COVID-19.

22. On or about March 30, 2020, Defendant unexpectedly closed the store located at 10201 Philadelphia Rd., White Marsh, MD 21162. Given the timing of the unrelated employee contracting COVID-19, a reasonable conclusion can be drawn that this closure was related to the COVID-19 pandemic.

23. On or about April 8, 2020, Plaintiff received a letter from Defendant informing him that he was furloughed with pay until further notice.

24. On or about April 16, 2020, Plaintiff along with four (4) other associates was asked by the store manager, a representative of Defendant, to return to work. The employees were assured that proper precautions would be implemented to ensure each employees safety and cleanliness of their workspaces.

25. Upon Plaintiff's arrival to work on or about April 17, 2020, he was briefed, along with the other employees and managers about Defendant's expectations and continued operation during the pandemic.

26. Plaintiff noticed, upon arriving to his workstation, that the assigned workspace had not been properly prepared prior to his return. There were no signs of sanitation and what is

more, Plaintiff was confined to a smaller work area where he was seated less than the required six (6) feet apart from his other coworkers.

27. Concerned for his safety, Plaintiff asked Defendant for a mask and sanitization products, specifically Lysol spray, so that he could sanitize his area and limit his exposure to any infected persons.

28. Not only did Defendant refuse to provide Plaintiff with a mask, but Plaintiff was also informed that he would have to purchase his own sanitization products as none would be provided to him by Defendant.

29. While working, Plaintiff observed other sales associates exhibiting symptoms of COVID-19, specifically coughing and sneezing, but Defendant refused to address this obvious display of a potential respiratory infection.

30. Concerned, Plaintiff expressed to the on duty manager, a representative of Defendant, is concerns with Defendant's lack of a plan to implement and enforce proper safety measures to ensure the continued well-being of its staff, their families, and Defendant's customers. Disinterested in Plaintiff's concerns, the on-duty manager left the conversation without any response to Plaintiff's appropriately raised concerns.

31. On or about April 22, 2020 Plaintiff was scheduled to be off but came into the office to ensure that a customer's paperwork was properly prepared ahead of the customers appointment.

32. Plaintiff asked a manager, a representative of Defendant, to review the paperwork to ensure its preparedness for the appointment. Plaintiff was informed that the paperwork would be reviewed by a manager upon the customer's arrival.

33. Plaintiff was later approached by a manager, a representative of Defendant, regarding the verification process of the documents prior to the clients arrival. Plaintiff shared that the documents would be reviewed by a manager upon the clients arrival.

34. Dissatisfied with Plaintiff's response the manager, a representative of Defendant, escorted Plaintiff to an area where Plaintiff was further questioned regarding this chain of events.

35. Upon conclusion of this conversation, Plaintiff thought it to be a good opportunity to share some of his concerns regarding Defendant's lack of procedures and protocols to protect its employees, including, but not limited to Plaintiff, from the contraction of COVID-19.

36. Visibly upset, the manager, a representative of Defendant, instructed Plaintiff to take the following day off.

37. The following day, Plaintiff was informed by Defendant that he was placed on administrative leave, which subsequently was followed by termination on April 27, 2020.

## CAUSE OF ACTION

### Count I: Violations of the ADA

38. Plaintiff hereby realleges the foregoing as if fully restated herein.

39. The ADA Amendment Act of 2008 (ADAAA) applies to Plaintiff's ADA claims of retaliation and wrongful termination because Defendant's actions took place after the effective date of the ADAAA. Pub. L. 110-325, § 8, 122 Stat. 3553 (Sept. 25, 2008), codified at 42 U.S.C. § 12101 (Note). Under the ADAAA, it is unlawful to discriminate against an employee when there is a "…a known disability of an individual with whom the [employee] is known to have a relationship or association."

40. Among other things, Defendant did the following, in violation of the ADAAA:

   a. failed and refused to make and implement reasonable accommodations to Plaintiff knowing the disability of Plaintiff's wife with whom Plaintiff resides, which failure and refusal was not in good faith;

   b. terminated Plaintiff's employment based on the need to make reasonable accommodations to Plaintiff knowing the disability of Plaintiff's wife with whom Plaintiff resides;

   c. terminated Plaintiff's employment based on the need to make reasonable accommodations to Plaintiff knowing the disability of Plaintiff's wife with whom Plaintiff resides, despite Plaintiff's good sales performance for a substantial period of time;

   d. failed to engage with Plaintiff to determine the extent and nature of the necessary reasonable accommodations for Plaintiff in light of his wife's disability and susceptibility to contracting COVID-19; and

   e. otherwise discriminated against Plaintiff based upon disability under the ADA.

41. Throughout the coronavirus pandemic, Plaintiff participated in a protected activity by openly and expressly stating his concerns of wearing protective gear, such as a face mask and gloves, to protect himself and his family from contracting covid-19.

42. Plaintiff's wife suffers from a medical disability contemplated under the ADAAA that makes her more susceptible to life threatening symptoms if she were to contract the virus.

43. Plaintiff's expressions of concerns went ignored until he was ultimately terminated for expressing concerns related to Defendant's lack of precautions and safety plan to protect its employees and their family members with whom they reside.

44. The reason given for the termination of Plaintiff's employment was false and pretextual, and Defendant knew that the reason offered Plaintiff was false and a mere pretext for the real reason for the termination of his employment, namely, the intentional discrimination by Defendant described herein on account of Plaintiff's wife's disability. Alternatively, Defendant's reasons for terminating Plaintiff from his job were mixed with impermissible reasons based on disability.

45. Plaintiff was and is qualified for the job he was performing because he satisfies the skill, experience and other job-related requirements for the position as well as other positions at Defendant. All of which is supported by a history of performance awards and documented praises from various customers throughout Plaintiff's employment.

46. At all relevant times, Plaintiff was able to perform the essential functions of the position he was occupying with or without reasonable accommodation.

47. Defendant has engaged in a pattern and practice of acts which discriminated against Plaintiff in employment opportunities on account of disability, and Defendant, through its employees, agents and supervisors, intentionally discriminated against Plaintiff based upon disability. Defendant's conduct further constituted prohibited harassment based on disability.

48. Defendant's acts and practices described herein were intentional and were performed with malice and/or reckless indifference to the Plaintiff's federally protected civil rights within the meaning of § 102(b)(1) of the Civil Rights Act of 1991.

**Count II: Violations of the ADA - Retaliation**

49. Plaintiff hereby realleges the foregoing as if fully restated herein.

50. Plaintiff opposed the inaction of Defendant to implement a safety plan and other protocols to ensure the safety of its employees and the family members with whom those employees reside with, and requested reasonable accommodation related to the same. After Plaintiff's requests and discussion with management and after requesting reasonable accommodations for himself and his wife's ADD, Plaintiff's employment was terminated.

51. Defendant discriminated and retaliated against Plaintiff because he opposed the conduct by Defendant made unlawful under the ADA, and pursuant to 42 U.S.C. § 12203(a), and because he requested reasonable accommodations for his wife's disability, including through the termination of Plaintiff's employment.

52. Defendant engaged in the retaliatory practices complained of with malice or with reckless indifference to the federally protected rights of Plaintiff, as contemplated by 42 U.S.C. § 1981a(b)(1).

53. Plaintiff is entitled to recover punitive damages in addition to the other damages to which he is entitled.

## DAMAGES

54. As a consequence of Defendant's intentional discrimination based on disability, Plaintiff has suffered, continues to suffer and will in the future suffer great emotional distress, anxiety, stress, embarrassment, humiliation, pain, suffering, damage to reputation and loss of enjoyment of life.

55. As a consequence of Defendant's actions, Plaintiff has lost wages and other financial incidents and benefits of employment, and Plaintiff will continue to suffer such losses.

56. As a consequence of the acts and omissions of Defendant, Plaintiff has incurred and will continue to incur attorneys' fees, costs and expenses.

57. As a consequence of the forgoing conduct of Defendant, Plaintiff has damages in an amount exceeding the jurisdictional requirements of the Court.

## **RELIEF**

58. Plaintiff requests that the Court issue the following relief:

    a. Enter declaratory relief declaring that Defendant have engaged retaliation and constitutional violations under 42 U.S.C. Section 1981;

    b. Award Plaintiff compensatory and punitive damages for all the mentioned causes of action in an amount to be determined by a jury of his peers;

    c. Award Plaintiff attorney's fees, cost and expenses of litigation; and

    d. Award such other relief to which Plaintiff may be entitled to under law.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff demands judgment against Defendant in an amount exceeding the jurisdictional requirements of this Court, all together with Court costs, including attorney's fees, plus pre and post judgment interest, and for any other relief which this Court deems just and proper.

Respectfully submitted, this 2nd day of November 2020

/s/Charles Tucker Jr. Esq.
Tucker Moore Group LLP
Charles Tucker, Jr. Esq. #993515
8181 Professional Place Ste. 207
Hyattsville, MD 20785
charles@tuckerlawgroupllp.com